IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 15-2511

UNITED STATES OF AMERICA

v.

DANIEL THOMAS CURRAN
Appellant

ON APPEAL FROM THE JUDGMENT ENTERED IN
THE UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF PENNSYLVANIA, ON JUNE 4, 2015,
AT 1:13-CR-0259 (CALDWELL, J.)

BRIEF FOR APPELLEE

PETER J. SMITH
United States Attorney

MEREDITH A. TAYOR
Assistant United States Attorney
United States Attorney's Office
Middle District of Pennsylvania
228 Walnut Street, Suite 220
Harrisburg, Pennsylvania 17108
(717) 221-4482

# TABLE OF CONTENTS

Page

Table of Authorities...................................................................................iii

Statement of Jurisdiction............................................................................ 1

Statement of Issues and Standards of Review ......................................... 2

Statement of the Case ................................................................................ 3

Statement of Related Cases and Proceedings ........................................ 12

Summary of Argument.............................................................................. 13

Argument.................................................................................................... 14

I.      THE DISTRICT COURT PROPERLY DENIED THE
        MOTION TO SUPPRESS ...................................................... 14

        A.      The "Plain View" doctrine permitted detectives to seize
                the bags without a warrant ......................................... 15

        B.      The "Transportation" exception permitted detectives to
                perform a cursory search of the bags without a
                warrant......................................................................... 17

        C.      The "Abandoned Property" theory permitted detectives
                to seize the bags without a warrant ............................ 33

        D.      There was no fruit of the poisonous tree ..................... 26

        E.      The exclusionary rule does not apply in this case....... 27

i

II.   THE DISTRICT COURT DID NOT ABUSE ITS
      DISCRETION WHEN IMPOSING A SENTENCE THAT
      SUBSTANTIVELY REASONABLE ..................................... 29

      A.   The district court appropriately considered the need to
           protect society from the defendant when imposing
           sentence ...................................................................... 31

      B.   The district court meaningfully considered the
           defendant's age when imposing sentence .................... 33

Conclusion ............................................................................... 35

# TABLE OF AUTHORITIES

Page

## Cases

*Abel v. United States*,
362 U.S. 217 (1960) .......................................................................... 22

*California v. Acevedo*,
500 U.S. 565 (1991) .......................................................................... 14

*California v. Greenwood*,
486 U.S. 35 (1988) ............................................................................ 23

*California v. Hodari D.*,
499 U.S. 621 (1991) .......................................................................... 25

*Coolidge v. New Hampshire*,
403 U.S. 443 (1971) .......................................................................... 15

*Florida v. Jimeno*,
500 U.S. 248, 111 S. Ct. 1801, 114 L.Ed.2d 297 (1991) ................. 14

*Gudema v. Nassau County*,
163 F.3d 717 (2d Cir. 1998) ............................................................. 23

*Herring v. United States*,
555 U.S. 135, 137 (2009) ........................................................... 27, 28

*Horton v. California*,
496 U.S. 128 (1990) ..................................................................... 15, 16

*United States v. Collis*,
766 F.2d 219, 222 (6th Cir. 1985) .................................................... 25

*United States v. Franz*,
772 F.3d 134, 2014 WL 5565457 (3d Cir. 2014) ............................. 28

*United States v. Grier*,
   475 F.3d 556 (3d Cir. 2007) (en banc) ........................................... 30

*United States v. Grober*,
   624 F.3d 592 (3d Cir. 2010) ........................................................... 29

*United States v. Katzin*,
   769 F.3d 163, 177 (3d Cir. 2014) (en banc) ................................... 28

*United States v. King*,
   454 F.3d 187 (3d Cir. 2006) ........................................................... 30

*United States v. Matthews*,
   532 F. App'x 211 (3d Cir. 2013) .................................... 18, 19, 21, 22

*United States v. Menon*,
   24 F.3d 550 (3d Cir. 1994) ....................................................... 15, 16

*United States v. Moody*,
   485 F.2d 531 (3d Cir. 1973) ........................................................... 24

*United States v. Perez*,
   280 F.3d 318 (3d Cir. 2002) ............................................................. 2

*United States v. Perkins*,
   871 F. Supp. 801 (M.D. Pa. 1995), aff'd 91 F.3d 127
   (3d Cir. 1996) ................................................................................. 23

*United States v. Place*,
   462 U.S. 696 (1983) ....................................................................... 23

*United States v. Rem*,
   984 F.2d 806 (7th Cir. 1993) ......................................................... 23

*United States v. Salmon*,
   944 F.2d 1106 (3d Cir. 1991) ......................................................... 14

*United States v. Stabile*,
   633 F.3d 219 (3d Cir. 2011)............................................................ 16

*United States v. Tomko*,
   562 F.3d 558 (3d Cir. 2009).................................................. 2, 29, 30

*U.S. v. Thomas*,
   864 F.2d 843 (D.C. Cir. 1989).................................................. 22, 25

*United States v. Wise*,
   515 F.3d 207 (3d Cir. 2008)............................................................ 30

## Federal Statutes

18 U.S.C. 2251(a)........................................................................................ 3

18 U.S.C. 2252A(a)(2).................................................................................. 3

18 U.S.C. 2252A(a)(5)(B)............................................................................. 3

18 U.S.C. § 3231 ........................................................................................ 1

18 U.S.C. § 3553(a)  .................................................... 9, 10, 13, 30, 33, 34

18 U.S.C. § 3742(a).................................................................................... 1

28 U.S.C. § 1291 ........................................................................................ 1

## Federal Rules

Fed. R. Crim. P. 11(a)(2) ........................................................................... 3

## Other Authority

Hall, Ryan C. W., M.D. and Richard C.W. Hall, M.D., P.A., *A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes and Forensic Issues*, Mayo Clin. Proc. April 2007, 82(4):467 ............................................................................. 32

Hall, Ryan C.W., M.D. and Richard C.W. Hall, M.D., P.A., *A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes and Forensic Issues*, Mayo Clin. Proc. April 2007, 82(4):458 ............................................................................. 32

Wolak, Finklehor, and Mitchell, *Child Pornography Possessors Arrested in Internet-Related Crimes: Findings from the National Juvenile Online Victimization Study* (2005) at 16 ....................................... 32

## STATEMENT OF JURISDICTION

The United States District Court for the Middle District of Pennsylvania had subject matter jurisdiction over this criminal case pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

The district court entered its judgment and sentence on June 4, 2015. (App. 3-9.) The Defendant timely filed his notice of appeal on June 17, 2014. (App. 1.)

## STATEMENT OF ISSUES AND STANDARDS OF REVIEW

I.   **WHETHER THE DISTRICT COURT ERRED IN DENYING CURRAN'S MOTION TO SUPPRESS EVIDENCE.**

"This Court reviews the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercises plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

II.  **WHETHER CURRAN'S 70 YEAR SENTENCE IS SUBSTANTIVELY UNREASONABLE.**

This Court reviews the substantive reasonableness of a sentence for abuse of discretion.   See *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc).

## STATEMENT OF THE CASE

### A.    Procedural History

On September 10, 2014, Appellant Daniel Thomas Curran was charged in a three-count superseding indictment with production of child pornography in violation of 18 U.S.C. § 2251(a) (Count 1), receipt of child pornography in violation of 18 U.S.C § 2252A(a)(2) (Count 2) and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 3).  (App. 195-99.)  On November 18, 2014, pursuant to a written plea agreement, Curran pleaded guilty to all counts.  (App. 200-44.)  This plea agreement was a conditional agreement that reserved Curran's right pursuant to Fed. R. Crim. P. 11(a)(2) to appeal the district court's previous decision denying Curran's motion to suppress evidence.  (App. 10-16.)

A Presentence Investigation Report ("PSR") was prepared, and the parties submitted sentencing memoranda.  (App. 18.)  On June 4, 2015, Curran was sentenced to the statutory maximum on each count to be served consecutively, a total of 70 years in prison.  (App. 4, 265.)  He filed a timely notice of appeal on June 17, 2015.  (App. 1.)

3

B.    Statement of the Facts

a.    The Offense Conduct

Curran sexually abused a minor boy, 9 year old C.S., for two months while Curran was living with the boy's family. (PSR ¶¶ 6-17.) Knowing the child's age, Curran anally penetrated C.S. with objects, manually and orally stimulated C.S., and recorded this abuse. (PSR ¶¶ 6-17.)

In August and September, 2013, Curran lived with R.S. in York County, Pennsylvania along with R.S.' two young children. (PSR ¶ 6.) In September 2013, law enforcement received three separate reports of suspicious activities involving Curran, including a report from R.S. that he found his 9 year old son, C.S., in Curran's bed. (PSR ¶¶ 6-7.)

On September 27, 2013, law enforcement learned Curran had a storage unit at Capital Self Storage in East York and observed Curran leaving the storage facility on foot. (PSR ¶ 11.) Detectives Mark Baker and Michael Hine of the Northern York County Regional Police Department (NYCRPD) observed Curran's vehicle in an adjacent parking lot and located three bags lying on the ground at the base of a fence surrounding the storage unit. (PSR ¶ 11.)

4

A laptop computer and 62 flash drives were located in the bags. (App. 53; PSR ¶ 12.) Detective Baker applied for and received a search warrant to examine the computer and the flash drives on this same day, September 27, 2013. (App. 54, 124-28.) Detective Hine also obtained a search warrant for Curran's storage unit that day. (App. 54-55, 108-13.)

The FBI conducted a forensic review of the images on the computer and a number of the flash drives and determined they contained 3.9 million images. They identified more than 40,000 images of child pornography and then stopped counting due to the voluminous nature of the evidence. Some of the images on these devices are of children as young as toddlers, some show penetration of the genitals of children under the age of 12 years old, some as young as toddlers, by adults and many depict sexually explicit conduct, including vaginal and anal penetration, oral to penile contact, digital penetration, bondage of children, and the lascivious exhibition of the genital area. (PSR ¶ 13.)

There are approximately a dozen videos showing Curran sexually assaulting 9 year old C.S., by anal penetration with objects and oral and

manual stimulation. (PSR ¶ 15.) These videos include audio of Curran's voice and show Curran's face as well. (PSR ¶ 15.)

### b.   The Motion to Suppress and Evidentiary Hearing

Prior to his plea, Curran challenged the search and seizure of his bags at the storage facility via a motion to suppress. After briefing and an evidentiary hearing, the district court denied the motion. (App. 10-16.) The following facts are relevant to any review of that denial.

On September 24, 2013, after receiving a report that Curran was displaying pictures of naked children on his cellular telephone, Detective Michael Hine obtained a search warrant for Curran's cellular telephone. (App. 29-35, 93-96.)

On September 25, 2013, R.S. reported to NYCRPD that several items were missing from his home, including personal items belonging to C.S. (App. 38-39.) R.S. also advised that Curran had a storage unit in York. (App. 42.)

On September 26, 2013, Detective Hine obtained a search warrant for Curran's vehicle to search for the stolen items. (App. 39-40, 97-103.) The next day, he and Detective Baker met with Curran to execute the warrant. (App. 40.) None of the stolen items were located in Curran's

6

vehicle. (App. 41.) At that time, Detective Hine asked Curran if he had a storage unit and Curran lied and said he did not. (App. 42-43.)

Moments after Curran had lied about having a storage unit, Detective Baker of NYCRPD called Capital Self Storage in East York and confirmed Curran rented a storage unit at that facility. (App. 43-44.) Detective Baker was informed Curran was currently at the storage facility. (App. 44.) Detective Hine met Curran as he was exiting the storage facility on foot. (App. 45.) He was leaving the storage unit empty-handed and was looking back towards a fence while speaking with the police. (App. 45, 47.) Detective Hine detained Curran in the back of his car and provided him with his *Miranda* warnings. (App. 46, 74, 87.)

Detectives Baker and Hine observed Curran's vehicle in an adjacent parking lot and they drove over to it. (App. 46.) Detective Hine also located three bags lying on the ground near the fence surrounding the storage unit. (App. 46-47; PSR ¶ 11.) At least one of the bags was open and some of its contents spilled out onto the grass. (App. 47-50.) The detectives could see what looked like a knife, DVDs and a child's toy lying on the grass. (App. 50, 63-64.) The items they

could see were consistent with those that R.S. had reported stolen.
(App. 50.) They photographed the bags prior to touching or moving any
of the evidence. (App. 49.) Detective Hine asked Curran several times
if the bags belonged to him, and each time Curran said no. (App. 52.)
Detective Hine did a brief inspection of the bags for officer safety before
placing them in his patrol car and did see a cellular telephone in one of
the bags. (App. 50-51.) Once Detective Hine confronted Curran with
the cell phone, he admitted he had taken the cell phone from R.S. (App.
50-51.) Curran eventually admitted the bags were his. (App. 52; PSR ¶
11.) The bags were seized as evidence and taken to the police station to
be inventoried. (App. 52-53.) Detective Hine testified at the
suppression hearing that he would have arrested Curran for theft
whether he had found the cell phone or not. (App. 73.)

### c.    The Sentencing Hearing

After Curran pleaded guilty, the district court held a sentencing
hearing on June 4, 2015. (App. 245-70.) The U.S. Probation Office
determined that under the Sentencing Guidelines Curran's Total
Offense Level was a 45, which reverted to 43 as it was the upper limit,
and his Criminal History Category was a I. (PSR ¶¶ 57, 60.) Therefore,

the advisory guidelines called for a sentence of life imprisonment in this case but the statutory maximum available here was 840 months. (PSR ¶ 86.)

During the hearing, the defense objected to a proposed obstruction of justice enhancement and the district court sustained that objection. (App. 248.) All parties acknowledged this decision had no effect on the advisory guidelines range. (App. 248-49.) The defendant requested a downward variance, arguing that 70 years was greater than necessary to achieve the purposes set forth in 18 U.S.C. § 3553(a). (App. 254.) The defense argued that Curran was "remorseful" for what he did to C.S. (App. 253.) Even Curran himself did not support that statement. When given a chance to speak to the district court, all Curran said was that the "[d]eath penalty will still do it for me." (App. 254.)

After hearing argument from the government, the court imposed sentence. (App. 263-65.) The court discussed its consideration of the factors under 18 U.S.C. § 3553(a). (App. 263-65.) The court noted "this is one of the most disturbing cases I think I've ever had." (App. 264.) The court commented "[w]hat was done to the victim in this case is disgusting and had to be done by a person who is depraved." (App. 264.)

9

The court expressed its consideration of the need for the sentence to protect the public from further crimes by Curran, a valid 3553(a) factor, in stating "I'm concerned about if he [Curran] would do it to this child, I think he would do it to another child if he had an opportunity to do that." (App. 264.) The court also noted it was considering Curran's "possession of an unbelievable quantity of sickening pornography involving children as young as toddlers, in my mind, reflects a person who may continue to pose a threat to children and is one who must be deterred by removal from society and from the community." (App. 264.)

In considering Curran's claim of victimization of sexual abuse, the court concluded that "I would expect that such an experience would make it less likely that as a 40-year-old man he would subject a child to the depravity that's involved in this case and to the similar depravity. Certainly this experience, if true, cannot serve as an excuse for what the defendant did to the 9 year old victim in this case." (App. 264-65.) After considering "the 3553(a) factors, the arguments of counsel, the Defendant's statement, the facts agreed to at the plea agreement and the pre-sentence report," the district court sentenced Curran to 360 months in prison on Count 1 and 240 months in prison on Counts 2 and

10

3, to be served consecutively to each other and to Count 1, a total sentence of 840 months. (App. 265.)

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Counsel for the United States is not aware of any other case or proceeding contemplated or pending before this Court or any other court or agency, state or federal, which is in any way related to the instant case.

## SUMMARY OF ARGUMENT

First, the district court correctly denied Curran's motion to suppress evidence. The record supports the district court's conclusion that the warrantless search of the bags was justified under the plain view doctrine as well as the need for officer safety during transportation. Moreover, contrary to the district court's decision on the matter, the bags in question were also abandoned property, such that Curran had no reasonable expectation of privacy in their contents.

Second, the district court's sentence was reasonable. The advisory Guidelines sentencing range was correctly calculated. The court considered Curran's request for a downward variance, recognized its ability to vary, and exercised its discretion not to grant the motion. After carefully considering Curran's arguments under 18 U.S.C. § 3553(a). After considering those arguments and noting the egregious nature of the facts of this case, the court imposed an appropriate sentence within the advisory guidelines range. Therefore, the sentence was substantively reasonable and should be affirmed.

## ARGUMENT

I.    **THE DISTRICT COURT PROPERLY DENIED THE MOTION TO SUPPRESS.**

The Supreme Court has recognized that "[t]he touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S. Ct. 1801, 114 L.Ed.2d 297 (1991). Warrantless searches and seizures are presumptively unreasonable and are therefore prohibited under the Fourth Amendment, unless an exception applies. "It remains a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." *California v. Acevedo*, 500 U.S. 565, 580, (1991). These exceptions are based on a determination that the government's legitimate interests in the search outweigh the individual's legitimate expectation of privacy. See *United States v. Salmon*, 944 F.2d 1106, 1120 (3d Cir. 1991).

Whether Curran had a reasonable expectation of privacy in the bags the detectives found lying in the grass is an issue the government raised for the district court's consideration in this case. (App. 21.) While the district court ultimately determined Curran did have an

expectation of privacy in these bags, and concluded the bags had not been abandoned, the district court did find the warrantless search and seizure of the bags lawful based on the plain view doctrine and officer safety. (App. 14-15c.) Accordingly, the district court denied Curran's motion to suppress the evidence and did not address Curran's fruit of the poisonous tree argument. (App. 15c.)

A.    The "Plain View" doctrine permitted detectives to seize the bags without a warrant.

Law enforcement officers may seize evidence in plain view without a warrant under certain circumstances. *See Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971). Under the "plain view" doctrine, police "may seize incriminating evidence in plain view during the course of a lawful search because such a seizure 'does not involve an intrusion on privacy.'" *United States v. Menon*, 24 F.3d 550, 559 (3d Cir. 1994), quoting *Horton v. California*, 496 U.S. 128, 141 (1990). There are three requirements for valid seizures of evidence in plain view. First, the officer must have lawfully "'arriv[ed] at the place from which the evidence could be plainly viewed.'" *Menon*, 24 F.3d at 559. Second, "the incriminating character of the evidence must be 'immediately

15

apparent.'" *Horton*, 496 U.S. at 136. Third, "the officer must have a 'lawful right of access to the object itself.'" *Id.* at 137.

The plain view doctrine generally applies in circumstances where "the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character." *Horton*, 496 U.S. at 135; see also *United States v. Stabile*, 633 F.3d 219, 241-42 (3d Cir. 2011); *Menon*, 24 F.3d at 560. In such circumstances, the first and third prongs of the *Horton* inquiry are satisfied so long as "the agent's search fits within the literal terms of the warrant and is a reasonable means of obtaining the objects described in the warrant." *Menon*, 24 F.3d at 560; *Stabile*, 633 F.3d at 241-42.

The first prong of the *Horton* inquiry is satisfied here because the evidence was found in a public place, lying in the grass outside a gated storage facility. (App. 47-49.) Detective Hine immediately recognized at least some of the stolen evidence discovered in plain view, including a knife, DVDs, and a toy car. (App. 50, 63-64, 75-76.) Therefore, the "immediately apparent" prong is also satisfied. Finally, because the

16

bags were lying in the grass in a public space, the detectives had lawful access to the evidence. (App. 7, 47-49.)

The district court, therefore, concluded the warrantless seizure of the bags was a permissible plain view seizure. (App. 7.)  Curran argues that because only one of the three bags was opened with contents spilling onto the grass, a search of the two unopened bags was not justified. (Curran Br. at 19.)  Given that the open bag and its spilled contents were found lying in the grass alongside two other bags that were unopened, it was reasonable for the detectives to collect them together.  Seeing items spilling from one bag that matched the description of reported stolen items made it more likely the other bags also contained evidence of the theft.  It was also reasonable to transport all the bags with Curran together, as discussed below.

## B.    The "Transportation" exception permitted detectives to perform a cursory search of the bags without a warrant.

In light of its finding that the seizure of the bags was reasonable, the district court went on to determine that the warrantless search of the bags done on scene by Detective Hine was also permissible. (App. 7.) This Court held that

17

> when a valid arrest has been made in a public place, which
> requires that the arrested person be transported from the
> scene, police may search any luggage that the person has in his
> possession at the time of the arrest, and which must accompany
> him to the police station, prior to transporting it.

*United States v. Matthews*, 532 F. App'x 211, 225-26 (3d Cir. 2013) (not

precedential). Based on concerns for officers when transporting an

arrestee to the police station coupled with an analysis of an individual's

expectation of privacy once in police custody, this Court concluded

"searches of this type are justified by concerns for officer safety and will

be valid whether or not an officer has probable cause to believe the

evidence contains contraband." *Matthews*, 532 F. App'x at 224.

Acknowledging this type of "search does not fall neatly into any of the

existing 'well-delineated exceptions' to the warrant requirement," the

*Matthews* Court agreed that it presented circumstances similar to those

that led to the creation of other specific exceptions, that is, where the

costs of obtaining a warrant, like danger to officers, outweigh the

potential benefits. *Id.* (internal citations omitted)

Similarly, here, the facts of this case do not allow it to be neatly

categorized into a specific exception. However, the Curran search bears

many similarities to the incident in *Matthews*. The *Matthews*

18

defendant was arrested on an outstanding warrant and Curran was initially taken into investigative detention and later arrested. During this entire incident, Curran was in handcuffs in the back of a police car after being provided with his *Miranda* warnings. After the bags and the stolen items are located, he was formally arrested for theft. (App. 52, 73.) At the suppression hearing Detective Hine testified that Curran would have been arrested for theft whether he had located the cell phone found in the bag or not. (App. 73.) Based on the above, the district court concluded there was sufficient probable cause to justify a theft arrest. (App. 15b-15c.)

In challenging this decision, Curran argues the district court misapplies the legal standard from *Matthews* and then alleges that *Matthews* does not apply to the instant matter at all.

First, Curran argues the district court misapplies the legal standard. Although the facts of the instant case are not identical to those in *Matthews*, the legal standard is still applicable. Curran argues *Matthews* applies only to searches of personal property following a valid arrest and here the search of the bags occurred prior to Curran's arrest.

(Curran Br. at 19.) Such an argument ignores the totality of the day's events, however.

This investigation began when Detectives Hine and Baker receive several reports of Curran engaging in suspicious behavior with children and an associated theft report involving stolen weapons, such as knives, bayonets, throwing stars, and nunchucks. (App. 15c, 29-35, 38-39, 50, 75-76, 101.) During the investigation Curran lies to them about having a storage unit and then proceeds to go immediately to that storage unit within minutes of spinning his lies. (App. 42-44.) At those storage units, a detective finds Curran exiting the storage facility with nothing in his hands but looking over his right shoulder. (App. 45, 47.) His vehicle is parked in an adjacent parking lot. (App. 46.) At that point the detective places Curran in investigative detention and provides him with his *Miranda* warnings. (App. 46, 74, 87.) Thus far the bags have not yet been discovered.

The detective drives a silent Curran over to the adjacent parking lot. (App. 46-47.) There detectives decide to check the fence line and locate three bags lying on the grass with some of the contents spilled out. (App. 47-50.) Detective Hine recognized some of the items spilled

20

out onto the grass as those reported stolen by R.S. (App. 49-50.) As a result, Detective Hine asks Curran several times if these bags are his, and he repeatedly denies that they are. (App. 52.) Not until the detectives had found, photographed, collected and begun a cursory search of the bags did Curran acknowledge ownership of them. (App. 52.) Furthermore, it was only when Detective Hine opened one bag, showed Curran a cell phone and confronted him with questions about whether it belonged to R.S. that Curran finally admitted his theft. (App. 50, 52.) Despite that fact, Detective Hine testified at the suppression hearing that Curran was going to be arrested on theft charges whether or not the cell phone had been located. (App. 73.)

In light of the facts above, the holding in *Matthews* applies in the instant matter. Curran was initially in investigative detention and then under arrest for theft. The bags located by the police were transported with them. Therefore, based on *Matthews*, the detectives lawfully searched the bags without a warrant.

Curran also argues that *Matthews* does not apply to the instant matter at all by conflating the several exceptions discussed in the *Matthews* opinion. He argues the "transportation" exception does not

apply because Curran was no threat to officer safety while handcuffed in the police car and nowhere near the bags. (Curran Br. at 19.) Such analysis explains why the *Matthews* Court determined the search incident to arrest exception did not justify the search in that case and has never been argued in the Curran matter as it does not fit the facts. *See id.* at 217-18. No similar factors are identified in the search pursuant to the transportation of an arrestee. *See id.* at 223-25.

### C. The "Abandoned Property" theory permitted detectives to seize the bags without a warrant.

Based on the facts developed at the suppression hearing, and despite the district court's rejection of the argument, the United States believes (and argued to the district court) that the search and seizure of the bags was reasonable even without a warrant as Curran had abandoned them. (App. 10-15.)

Warrants are not required for searches and seizures of abandoned property. *See Abel v. United States*, 362 U.S. 217, (1960). By voluntarily abandoning property, an individual forfeits any reasonable expectation of privacy in that property, even if he or she retains an ownership interest in it. *See U.S. v. Thomas*, 864 F.2d 843, 846 (D.C. Cir. 1989) (reasonable expectation of privacy relinquished when

22

defendant left gym bag in public hallway because property deemed
abandoned regardless of defendant's continued ownership interest and
intent to retrieve it later); *see also California v. Greenwood*, 486 U.S.
35, 39-41 (1988) (warrantless seizure of trash bag deposited at curbside
for collection valid because trash left in public view and accessible to
public, thus negating reasonable expectation of privacy in it); *Gudema
v. Nassau County*, 163 F.3d 717, 722 (2d Cir. 1998) (search of
abandoned property does not violate privacy interest even if ownership
or property interest in item exists because "mere ownership of property
does not establish a legitimate expectation of privacy unless the owner
vigilantly protects the right to exclude others").

Although a person has a privacy interest in the contents of his
personal luggage, he forfeits that interest when he abandons his
property. See *United States v. Place*, 462 U.S. 696, 707 (1983). A court
must determine from an objective viewpoint whether property has been
abandoned. See *United States v. Perkins*, 871 F. Supp. 801, 803 (M.D.
Pa. 1995), aff'd, 91 F.3d 127 (3d Cir. 1996) (table); see also *United
States v. Rem*, 984 F.2d 806, 810 (7th Cir. 1993). Proof of intent to

23

abandon property must be established by clear and unequivocal
evidence. See *United States v. Moody*, 485 F.2d 531, 534 (3d Cir. 1973).

The bags at issue here -- found lying on the grass in a public space
-- were abandoned. Even assuming Curran was in fact the owner of the
bags as he testified to at the suppression hearing, he abandoned any
reasonable expectation of privacy when he threw the bags over the fence
and walked away from them. (App. 52, 78-79, 83, 85.) Curran testified
he tossed the bags over the fence and then turned and walked back
towards the main gate of the storage facility. (App. 79, 85-86.) Curran
hoisted them over a fence and left them there at approximately 8:30
a.m. in the morning. (App. 86.) The clear and unequivocal evidence
establishes Curran had indeed abandoned the bags. He initially
renounces ownership of the bags to the police. (App. 52.) It was not
until Detective Hine confronts him with the cell phone in one of the
bags, that he finally admitted that the bags were his. (App. 50-52.)

These facts establish indicia of their abandonment. (App. 49.)
Curran no longer possessed the bags and no longer had the power or
intent to control them, after he abandoned them in the grass.

That Curran ultimately admitted the bags were his, following their search and seizure, does not erase his abandonment of the property. In a case where ownership of property was even more apparent, the D.C. Circuit determined a bag was nonetheless abandoned and a warrantless search was upheld. See *Thomas*, 864 F.2d at 845-46. In *Thomas*, an officer observed the defendant holding the bag while running into an apartment building, saw him crouching over it in a public hallway and then watched him walk away from the bag. *See id.* Despite the defendant's contact with the bag, the D.C. Circuit concluded Thomas had no reasonable expectation of privacy in a bag he had abandoned in a public hallway. See *Thomas*, 864 F.2d at 845-46. In the instant case, the bags are merely found lying on the grass outside in a public place, never seen in anyone's possession. A drug dealer who sees a police officer and tosses a bag containing drugs abandons that bag, even if he later admits the bag was his. See *California v. Hodari D.*, 499 U.S. 621, 624 (1991); see also *United States v. Collis*, 766 F.2d 219, 222 (6th Cir. 1985) (per curiam) (holding a defendant who threw a bag containing cocaine over a fence during a

25

pursuit by agents had abandoned the bag and failed to establish a legitimate subjective expectation of privacy in it).

Similarly, when Curran tossed the bags over the fence, he lost any reasonable expectation of privacy he had in the bags. Therefore, the detectives lawfully searched the bags without a warrant because a warrant is not required to search abandoned property.

### D.    There was no fruit of the poisonous tree.

Because there were no constitutional defects with the seizure or search of the bags, Curran's "fruit of the poisonous tree" argument necessarily must fail. Detectives lawfully seized the bags found on the ground outside Curran's storage unit and searched and seized evidence that they referenced in applications for subsequent search warrants, including in an application for a search warrant for the storage unit. Because this initial evidence was lawfully obtained, there was nothing problematic with the authorities' reliance on such evidence in obtaining the subsequent warrants. Because the later warrants were validly obtained and lawfully executed, the district court did not err in failing to address Curran's fruit of the poisonous tree argument. (App. 15c.)

If the Court reverses the ruling of the district court and determines the bags were unlawfully searched, this case should be remanded to the district court for a determination as to the fruit of the poisonous tree issue and whether any further proceedings are necessary.

### E.    The exclusionary rule does not apply in this case.

Even if the Court finds that a Fourth Amendment violation occurred, suppression of the evidence is not automatic.  See *Herring v. United States*, 555 U.S. 135, 137 (2009).  The Supreme Court held "[t]he fact that a Fourth Amendment violation occurred - i.e., that a search or arrest was unreasonable - does not necessarily mean that the exclusionary rule applies. Indeed, exclusion 'has always been our last resort, not our first impulse,' and our precedents establish important principles that constrain application of the exclusionary rule." *Herring*, 555 U.S. at 140.  This question "turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." Id. at 137.  The Supreme Court continued: "the exclusionary rule is not an individual right and applies only where it 'result[s] in appreciable deterrence.' We have repeatedly rejected the argument that exclusion

27

is a necessary consequence of a Fourth Amendment violation. Instead we have focused on the efficacy of the rule in deterring Fourth Amendment violations in the future." Id. at 141 (citations omitted).

The Supreme Court did acknowledge the reality that "the benefits of deterrence must outweigh the costs...[and] that possible benefit must be weighed against [its] substantial social costs." Id. (citations and internal quotation marks omitted). "The principal cost of applying the rule is, of course, letting guilty and possibly dangerous defendants go free. . . ." Id. see also *United States v. Franz*, 772 F.3d 134, 2014 WL 5565457 (3d Cir. 2014), (holding the "cost-benefit" analysis described in *Herring* must be applied in every case); see also *United States v. Katzin*, 769 F.3d 163, 177 (3d Cir. 2014) (en banc), made clear that in any assessment of application of the exclusionary rule, the court must consider the totality of the circumstances and weigh the costs and benefits of exclusion.

Therefore, the Court concluded, only "flagrant" official misconduct warrants suppression. See *id.* at 144. Conduct by the police that triggers the application of the exclusionary rule has been described as "deliberate that exclusion can meaningfully deter it," "sufficiently

28

culpable that such deterrence is worth the price paid by the justice system," "reckless, or grossly negligent conduct," or "recurring or systemic negligence."   Id. at 144.

Here, the detectives acted reasonably and diligently in investigating Curran.  Their investigation resulted in the arrest of the guilty party and stopped the abuse of a child.  Their conduct was not reckless, grossly negligent or deliberate in any way that warrants deterrence.  The potential costs, if any, far outweigh the benefits of deterrence in this situation, and the exclusionary rule should not be applied.   The district court's ruling should be affirmed.

## II.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IMPOSING A SENTENCE THAT WAS SUBSTANTIVELY REASONABLE.

This Court "review[s] sentences for abuse of discretion, and review[s] them for both procedural and substantive reasonableness." *United States v. Grober*, 624 F.3d 592, 599 (3d Cir. 2010) (citing *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc)). "The touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18

U.S.C. § 3553(a)." *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc).

Absent any procedural error, this Court will affirm a district court's sentence "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009); *see also United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008) ("[a]s long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm."). "The party challenging the sentence has the burden to demonstrate unreasonableness." *United States v. King*, 454 F.3d 187, 194 (3d Cir. 2006).

Curran makes no argument that his sentence is procedurally unreasonable and fails to demonstrate that the sentence is substantively unreasonable. In view of all the considerations noted by the district court, the sentence of 840 months, a sentence within the advisory guidelines range, was entirely reasonable.

A.    The district court appropriately considered the need to protect society from the defendant when imposing sentence.

Curran claims that "there comes a time when a defendant like Curran would surely pose no risk to the community, perhaps best determined by statistical life expectancy." (App. Br. 25.) An 840 month sentence and an over 30 year tenure on the federal bench suggested otherwise to the district court which stated: "I must say that I've been doing this for a long time, and this is one of the most disturbing cases I think I've ever had." (App. 264.)

Curran, who is 42 years old, argues that a lesser sentence is reasonable because recidivism declines at some undetermined point. He attempts to correlate recidivism with defendant's life expectancy. As the district court observed, "I'm concerned about if he [Curran] would do it to this child, I think he would do it to another child if he had an opportunity to do that." (App. 264.) The district court also described Curran as "a person who may continue to pose a threat to children and is one who must be deterred by removal from society and from the community." (App. 264.) Clearly, the district court had serious concerns about Curran's potential for recidivism at any age.

31

It is difficult to predict recidivism rates among child offenders. Generally, the data underestimates the rate at which predators will reoffend. *See* Hall, Ryan C. W., M.D. and Richard C.W. Hall, M.D., P.A., *A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes and Forensic Issues*, Mayo Clin. Proc. April 2007, 82(4):467. Depending on the analysis, rates of recidivism for pedophiles have been documented at between 10% and 50%. *Id.* However, scholarly research in this area demonstrates that men over 40 are the most common offenders of the child pornography laws and the overwhelming majority of them have no criminal history. *See* Wolak, Finklehor, and Mitchell, *Child Pornography Possessors Arrested in Internet-Related Crimes: Findings from the National Juvenile Online Victimization Study* (2005) at 16. "When compared with rapists and sexual sadists, pedophiles compromise 60% of all older offenders, indicating that pedophiles offend in their later years at a greater rate than other sexual offenders."   Hall, Ryan C.W., M.D. and Richard C.W. Hall, M.D., P.A., *A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes and Forensic Issues*, Mayo Clin. Proc. April 2007, 82(4):458.

Invoking general concepts of statistical life expectancy and recidivism rates does not meet Curran's burden in establishing that the sentence imposed is substantively unreasonable, nor does it demonstrate that no reasonable jurist would have imposed the same sentence if presented with the same facts. As such, this argument fails.

### B. The district court meaningfully considered the defendant's age when imposing sentence.

Curran also argues that a sentence exceeding his statistical life expectancy serves no purpose under 3553(a) and is substantively unreasonable. Notably, Curran did not offer any argument in his sentencing memorandum or at the sentencing hearing regarding statistical life expectancy.

Nevertheless, the district court carefully considered the 3553(a) factors and all the evidence presented at the sentencing hearing and stated "[w]hile a sentence of 70 years is substantial and could be a life sentence, I don't think it's unreasonable under all that is known about this case and about the Defendant. There's simply no excuse for the crimes committed by the defendant and I find nothing that suggests a lesser penalty." (App. 264.)

Given the gravity of Curran's conduct and the district court's deliberate consideration and balancing of the parties' arguments and the § 3553(a) factors, Curran cannot carry his burden of demonstrating unreasonableness. Therefore, the 840 month sentence imposed is appropriate and reasonable.

34

## CONCLUSION

For all the reasons stated above, the United States of America respectfully requests this Honorable Court affirm the conviction and sentence.

Respectfully submitted,

PETER J. SMITH
United States Attorney

Dated: October 1, 2015

/s/ Meredith A. Taylor
MEREDITH A. TAYLOR
Assistant United States Attorney
Attorney I.D. PA

228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, Pennsylvania 17108
(717) 614-4242
(717) 221-2246, facsimile

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

/s/ Meredith A. Taylor
Meredith A. Taylor
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief consists of 6,068 words and does not exceed the 14,000 word limit.

/s/ Meredith A. Taylor
Meredith A. Taylor
Assistant United States Attorney

## IDENTICAL PDF AND HARD COPY CERTIFICATE

The undersigned hereby certifies that the PDF file and Hard Copies of this brief are identical.

/s/ Meredith A. Taylor
Meredith A. Taylor
Assistant United States Attorney

## VIRUS SCAN CERTIFICATE

This e-mail and the attached brief has been automatically scanned during preparation and upon sending by the following virus detection programs: OfficeProtect/Inoculan, ScanMail, and Viruswall, and no viruses were detected.

/s/ Meredith A. Taylor
Meredith A. Taylor
Assistant United States Attorney

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 15-2511

UNITED STATES OF AMERICA

v.

DANIEL THOMAS CURRAN
Appellant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers. That this 1st day of October, 2015, she served two copies of the attached

### BRIEF FOR APPELLEE

by placing said copies in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania:

ADDRESSEE:
Ronald A. Krauss, Esq.
Federal Public Defender's Office
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
ronald_krauss@fd.org

October 1, 2015                    /s/ Mary Zerance
                                   Mary Zerance
                                   Legal Assistant