## NO. 15-2511

IN THE

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

## UNITED STATES OF AMERICA,
### *Appellee,*

v.

## DANIEL THOMAS CURRAN,
### *Appellant.*

---

**On Appeal from the Judgment entered in the U.S. District Court, Middle District of Pennsylvania, on June 4, 2015, at No. 1:13-CR-0259 (Caldwell, J.)**

---

# BRIEF FOR APPELLANT

---

JAMES V. WADE, ESQ.
Federal Public Defender

RONALD A. KRAUSS, ESQ.
Asst. Federal Public Defender-Appeals
100 Chestnut Street, Suite 306
Harrisburg, PA  17101
717-782-2237
*Attorneys for Appellant,*
*Daniel Thomas Curran*

# TABLE OF CONTENTS

Table of Authorities ........................................................................... iii

Statement of Jurisdiction .................................................................... 1

Statement of the Issues and Standards of Review ........................... 2

Statement of the Case ......................................................................... 3
    A.    Procedural History ................................................................. 3
    B.    Ruling Presented for Review ................................................. 4
    C.    Factual Background ................................................................ 5

Statement of Related Cases and Proceedings ................................. 14

Summary of the Argument ................................................................ 15

Argument .......................................................................................... 16

I.  The District Court erred in denying Curran's motion to suppress evidence from Curran's three unlawfully searched bags ........... 16

II. The District Court erred in denying Curran's motion to suppress evidence from the storage unit as its search was the product of the unlawful search of Curran's bags ............................................... 21

III. Curran's 70-year sentence is substantively unreasonable ....... 24

Conclusion .................................................................................…..27

Certification of Bar Membership, Identical Text, Virus Check, and Word Count.

Certificate of Service.

# Appendix

## Volume 1

Notice of Appeal
June 17, 2015 ................................................................1

Judgment in a Criminal Case (No. 1:13-CR-0259)(M.D. Pa.)(Caldwell, J.)
June 4, 2015 ................................................................3

Memorandum & Order (denying Motion to Suppress)
May 19, 2014 ...............................................................10

# TABLE OF AUTHORITIES

## Cases

*Coolidge v. New Hampshire,*
   403 U.S. 443 (1971) ........................................................................ 19

*Illinois v., Lafayette,*
   462 U.S. 648 (1983) ........................................................................ 20

*Murray v. United States,*
   487 U.S. 533 (1988) ........................................................................ 21

*Nix v. Williams,*
   467 U.S. 431 (1984) ........................................................................ 21

*South Dakota v. Opperman,*
   428 U.S. 364 (1976) ........................................................................ 20

*Wong Sun v. United States,*
   371 U.S. 471 (1963) ........................................................................ 22

*United States v. Albertson,*
   645 F.3d 191 (3d Cir. 2011) ........................................................ 25

*United States v. Brown,*
   448 F.3d 239 (3d Cir. 2006) .......................................................... 2

*United States v. Carter,*
   730 F.3d 187 (3d Cir. Cir. 2013) ................................................ 25

*United States v. Fulani,*
   368 F.3d 351 (3d Cir. 2004) ........................................................ 17

*United States v. Herrold,*
   962 F.2d 1131 (3d Cir. 1992) ...................................................... 21

iii

*United States v. Lowe*,
  791 F.3d 424 (3d Cir. 2015) ........................................................... 2

*United States v. Mallory*,
  765 F.3d 373 (3d Cir. 2014) ........................................................... 6

*United States v. Matthews*,
  532 F. Appx. 211 (3d Cir. 2013) .................................................... 19

*United States v. Menon*,
  24 F.3d 550 (3d Cir. 1994) ............................................................ 17

*United States v. Meyer*,
  827 F.2d 943 (3d Cir. 1987) .......................................................... 18

*United States v. Price,*
  558 F.3d 270 (3d Cir. 2009) .......................................................... 22

*United States v. Ward*,
  626 F.3d 179 (3d Cir. 2010) ..................................................... 25-26

*United States v. Wright*,
  642 F.3d 148 (3d Cir. 2011) ............................................................ 3

## Statutes, Rules & Sentencing Guidelines

18 U.S.C. § 2251(a) ........................................................................ 3, 9

18 U.S.C. § 2252A(a)(2) ................................................................ 3, 10

18 U.S.C. § 2252A(a)(5) .................................................................. 3, 9

18 U.S.C. § 3231 ................................................................................. 1

18 U.S.C. § 3553(a) ............................................................... 12, 15, 25

18 U.S.C. § 3742(a) ................................................................. 1

28 U.S.C. § 1291 ...................................................................... 1

Fed. R. Crim. P. 11(a)(2) ................................................... 3, 10

U.S.S.G. § 2G2.1(b)(5) ......................................................... 12

U.S.S.G. § 3C1.1 ..................................................................... 12

## Other Material

Social Security Life Expectancy Calculator,
*http://www.socialsecurity.gov/cgi-bin/longevity.cgixx* ................................ 13

# STATEMENT OF JURISDICTION

**A.    Subject Matter Jurisdiction.**

The District Court had subject matter jurisdiction under 18 U.S.C. § 3231.

**B.    Appellate Jurisdiction.**

Appellant filed a notice of appeal on June 17, 2015 (App. 1), from the Judgment of the United States District Court for the Middle District of Pennsylvania, Caldwell, J., entered on June 4, 2015. (App. 3-9.)

This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES AND STANDARDS OF REVIEW

**A.    Issues.**

    1.    Whether the District Court erred in denying Curran's motion to suppress evidence from Curran's three unlawfully searched bags.

    2.    Whether the District Court erred in denying Curran's motion to suppress evidence from the storage unit as its search was the product of the unlawful search of Curran's bags.

    3.    Whether Curran's 70-year sentence is substantively unreasonable

**B.    Standards of Review.**

This Court reviews a District Court's denial of a motion to suppress *de novo* as to questions of law, and reviews the underlying factual findings for clear error. *See United States v. Brown* (3d Cir. 2006)[1]. A district court's factual finding is clearly erroneous when, despite evidence to support it, this Court's review of the entire record leaves it with the definite and firm conviction that a mistake has been committed. *See United States v. Lowe* (3d Cir. 2015).[2]

---

[1] 448 F.3d 239, 245.

[2] 791 F.3d 424, 427.

2

To determine whether the District Court's sentence is substantively unreasonable, this Court applies an abuse of discretion standard, and the Court will affirm the sentence unless no reasonable sentencing court would have imposed the same sentence. *United States v. Wright* (3d Cir. 2011).[3]

## STATEMENT OF THE CASE

**A.    Procedural History.**

A federal grand jury filed a three-count Superseding Indictment on September 10, 2014, charging Defendant/Appellant Daniel Thomas Curran with violating 18 U.S.C. § 2251(a), production of child pornography (Count 1); 18 U.S.C. § 2252A(a)(2), receipt of child pornography; and 18 U.S.C. § 2252A(a)(5), possession of child pornography. (*See* App. 195-99.) Pursuant to a plea agreement, Curran pleaded guilty to all three counts. (*See* App. 200-27.) Under Fed. R. Crim. P. 11(a)(2), this was a conditional plea agreement that reserved Curran's right to appeal the District Court's earlier decision denying Curran's motion to suppress

---

[3] 642 F.3d 148, 152.

evidence. (*See* App. 10-16.) Judge Caldwell accepted the conditional plea at the November 18, 2014 Change of Plea Hearing. (*See* App. 228-44.)

At the June 4, 2015 Sentencing Hearing, the District Court sentenced Curran to the statutory maximum sentence for each count to be served consecutively, a total sentence of 70 years. (*See* App. 4, 265.) Curran objected to the 70-year sentence as greater than necessary, as Curran would be 111 years old when completed. (*See* App. 269.) Curran filed a timely Notice of Appeal on June 17, 2015. (*See* App. 1.)

## B.  **Ruling Presented for Review.**

Curran filed a motion to suppress evidence seized from three bags belonging to Curran that law enforcement unlawfully searched, as well as evidence seized from the search of a storage unit that was the product of the initial unlawful search of the three bags. (*See* App. 20, *Dkt. No. 64*; App. 21, *Dkt. No. 39*.) Curran reiterated his arguments in the April 8, 2014 Suppression Hearing. (*See* App. 24-90.)

The District Court denied Curran's motion to suppress. (*See* App. 10-16.)

At the June 4, 2015 Sentencing Hearing, the District Court, denying Curran's request for a substantial downward variance, sentenced Curran to the statutory maximum sentence for each Count of the Superseding Indictment to be served consecutively, a total sentence of 70 years. (*See* App. 4, 265.)

Curran, now 42 years old, objected to the 70-year sentence as greater than necessary. (*See* App. 269.)

## C.    Factual Background.

### 1.    *Offense conduct, Indictment, Superseding Indictment, Guilty Plea.*

**T**he Northern York County (Pa.) Regional Police received reports of suspicious activities by Curran, including a report from the father (R.S.) of two young children, that he suspected Curran (who had been living with them) had abused them, and a report from another man that Curran had shown him illegal images involving the children on Curran's cell phone. (*See* App. 28-34.) Detective Hine obtained a search warrant for the cell phone, and Curran voluntarily

gave it to him that day. (*See* App. 35-37.) In addition, R.S. reported to police that various items were missing from his home — a necklace, bracelet, ring, Nintendo DS, photo album, knives, throwing stars, nunchucks, two bayonets, old bullets, and an old cell phone — and that he believed Curran had a storage unit, location unknown. (*See* App. 10-11, 38-42.)

Detective Hine and Detective Baker learned that Curran did have a storage unit, and in a telephone conversation with one of the personnel, they were told that Curran was at the storage facility at that moment. Hine and Baker went to the storage facility and encountered Curran there. Hine put him in investigative detention, to avoid the possibility of destruction of evidence. (*See* App. 43-46.)

While at the storage facility, the police observed, outside the facilities' outer fence, three bags on the ground: a black Adidas duffle bag, a large black and gray Extreme rolling bag, and a blue Walmart hand [tote] bag. (*See* App. 47-49, 104-07.) The Walmart bag was open with some items spilled out onto the grass, which Curran admitted were his; he explained that he had thrown them over the facilities' outer fence to make it easier to get the bags to his car in the adjacent

parking lot.   The items that had spilled out of the Walmart bag, according to Detective Hine, were DVDs and film canisters (*see* App. 75-76), as depicted in photographs. (*See* App.106-07.) Detective Hine conceded that none of the items could be immediately identified as the stolen items belonging to R.S., and he noted that the DVDs did not include child pornography. (*See* App.  64-65.)[4]

Before putting the bags in the police car, Detective Hine opened the Adidas bag, found a phone, and Curran admitted that it belonged to R.S. (*See* App. 50.) The bags "were opened and numerous items reported by R.S. as stolen were found." (*See* App. 122, line 122.) So, all three bags were searched at the scene without a warrant. (*See* App. 57, 65-66.) And Detective Hines stated that before the bags were searched, he had no basis to arrest Curran. (*See* App. 68.)

Police then placed Curran under arrest for theft, and took him to booking and the three bags to the police headquarters. (*See* App. 52-53.) A search warrant was obtained for the computer and flash

---

[4] Detective Hine initially testified that he saw a knife in a leather case, DVDs, a toy, and a die-cast car consistent with what R.S. had reported stolen. (*See* App. 50.) But on cross examination, Detective Hine conceded that he was not sure there was a knife in a sheath laying outside the bag, or a toy die-cast vehicle (a Hot Wheels car). (*See* App. 75-76.)

drives found in one of the closed bags (*see* App. 53-54); ultimately, they were found to include illegal images.

Based on information flowing from the search of the three bags, the police obtained two search warrants for Curran's storage unit. Detective Hine applied for a search warrant for the storage unit, citing the items found in the bags to support probable cause necessary for the warrant. (S*ee* App. 61.) The search warrant contained the following:

> I observed Curran's vehicle to be in an adjacent parking lot near the storage facility. There were several bags near the fence area Curran had previously been looking. Curran stated the bags were his. I gave Curran miranda warnings at that time. He stated the items were his and he threw them over the fence . . . Curran was placed into the back of the patrol unit and I checked the items that were in the field next to the fence. One bag was spilled open with several camera film containers, a knife and child's toy laying the grass. I opened a duffle bag and found a cell phone inside..."

(S*ee* App. 194.)

Similarly, Detective Baker applied for a search warrant for the "Digital images seized from Daniel Curran to include: thumb drives, cellular phones, computers, external storage devices." (S*ee* App. 125.) Detective Baker's application also cited the items found in the bags:

Laying on the ground at the base of the fence surround (sic) the storage unit and separating the unit from Curran's vehicle was found three bags. Curran advised he through [sic] the bags over the fence as he exited his unit. Prior to the bags being placed in the truk [sic] of the police unit, they were opened and numerous items reported by [R.S.] as stolen were found. Curran was transported to Central Booking to be processed for theft charges.

(S*ee* App. 127b, lines 120-23).

Detective Baker also applied for and received another search warrant for Mr. Curran's storage facility. (S*ee* App. 116-23.) Detective Baker cites the items found in the bags to support the requisite probable cause for the warrant:

Prior to the bags being placed in the trunk of the police unit, they were opened and numerous items reported by R.S. as stolen were found.

(S*ee* App. 122, line 122).

When police executed the search warrants on the storage unit, they found several of R.S.'s missing items, and items relating to child pornography. (*See* App. 11-13; 55-57.)

Curran was initially charged in two-count Indictment, filed November 20, 2013, for violating 18 U.S.C. § 2251(a), production of child pornography (Count 1); and 18 U.S.C. § 2252A(a)(5), possession of child pornography. (*See* App., 22, *Dkt No. 16*.) In the September

10, 2014 Superseding Indictment, a third count for receipt of child pornography, 18 U.S.C. § 2252A(a)(2), was added. (*See* App. 195-99.)

After the District Court denied Curran's motion to suppress, discussed immediately below, Curran entered into a conditional Plea Agreement, under Fed. R. Crim. P. 11(a)(2), in which he pleaded guilty to all three counts, but reserved Curran's right to appeal the District Court's denial of his Motion to Suppress. (S*ee* App. 200-27.) Judge Caldwell accepted the conditional plea at the November 18, 2014 Change of Plea Hearing. (*See* App. 228-224.)

### 2.    *The Motion to Suppress.*

Curran filed a pretrial motion to suppress evidence obtained from the search and seizure of the three bags as unlawful warrantless searches, as well as evidence obtained from the storage unit, which was searched as a result of the search of the bags, and so "fruit of the poisonous tree". After a hearing and briefing, the District Court denied the Motion. (*See* App. 10-16.)

The District Court, first, agreed with Curran that a warrantless search of his bags was not justified on the grounds that he abandoned his bags, as Curran never acted so as to forfeit his

10

protected privacy interest in them. (*See* App. 14-15.) But the District Court did accept the Government's argument that the warrantless search was permissible because it met the criteria of a "plain view" seizure, observing that the bags were in a public place to which police had lawful access, and items had fallen out of one bag that purportedly appeared to be R.S.'s missing items (*See* App. 15-15a.)

The District Court also upheld the search of all three bags on the grounds that police arrested Curran in a public place requiring his transport from the scene, and the bags had to accompany him. The court ruled that in that circumstance, search of the three bags was justified by concerns for officer safety. (*See* App. 15b.)

Finally, because the District Court found the search of the bags lawful, it did not address Curran's argument that evidence seized from the search of the storage unit was "fruit of the poisonous tree" because facts used to support the probable cause for warrants for the storage units arose solely out of the unlawful search of the bags.

### 3.    *Sentencing.*

The Probation Office, in its Presentence Investigation Report ("PSR", submitted under seal), calculated Curran's Sentencing

Guidelines as Total Offense Level 43 (actually 45, but 43 is the limit) and Criminal History Category I, yielding a Guidelines sentencing range of Life, but the statutory maximum sentence for the three counts combined is 70 years. (*See* PSR ¶¶ 31-60, 85-86.)

In Defendant's Objection Letter (submitted under seal), Curran raised two objections to the Guidelines calculation: a two-level enhancement for custody, care, or supervisory control, under U.S.S.G. § 2G2.1(b)(5), and a two-level enhancement for obstruction of justice, under U.S.S.G. § 3C1.1.

By the time of the June 4, 2015 Sentencing Hearing, Curran had withdrawn his objection to the § 2G2.1(b)(5) enhancement, but reiterated the objection to the obstruction of justice enhancement. The District Court sustained that objection, though all agreed that the decrease of two levels in the Total Offense Level calculation would not change the Guidelines range. (*See* App. 246-49.)

Further, Curran's counsel requested a downward variance, arguing that the 70-year Guidelines range was greater than necessary to achieve the purposes set forth in 18 U.S.C. § 3553(a) — *e.g.*, the need of the sentence to protect the public from further

crimes — noting that a 70-year sentence for a now 42-year old man is substantially longer than necessary to protect the public, and substantially longer than his life expectancy.[5] (*See* App. 249-54, 262-63.)

The District Court denied the variance and imposed the Guidelines sentencing range of 70 years. (*See* App. 4, 263-65.) Counsel objected again to the length of the sentence as greater than necessary. (*See* App. 269.)

Curran filed a timely Notice of Appeal on June 17, 2015. (*See* App. 1.)

_____

[5] According to the Social Security Life Expectancy Calculator, available at *http://www.socialsecurity.gov/cgi-bin/longevity.cgi*, Curran's life expectancy is 82.1 years.

# STATEMENT OF RELATED CASES AND PROCEEDINGS

Appellant's counsel is unaware of any other case or proceeding that is in anyway related, completed, pending, or about to be presented before this Court or any other court or agency, state or federal. This case has not previously been before this Court.

# SUMMARY OF THE ARGUMENT

The District Court erred in denying Curran's motion to suppress evidence from Curran's three unlawfully searched bags because the record does not support the District Court's conclusion that the warrantless search was justified under the plain view doctrine, or the need for officer safety.

Further, the District Court erred in denying Curran's motion to suppress evidence from the storage unit as its search was the solely the product of evidence obtained from the unlawful search of Curran's bags.

Finally, Curran's 70-year sentence is substantively unreasonable because it violates the parsimony provision in 18 U.S.C. § 3553(a). Since Curran would be 111 years old at the completion of his sentence, it is substantially greater than necessary to achieve the purposes of sentencing as set forth in § 3553(a).

# ARGUMENT

## I.    The District Court erred in denying Curran's motion to suppress evidence from Curran's three unlawfully searched bags.

This Court should vacate the Judgment against Curran and remand for a new trial because the District Court erroneously denied Curran's motion to suppress evidence obtained from three bags belonging to Curran that police searched without a warrant.

This Court has observed that it is "a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *United States v. Mallory* (3d Cir. 2014)[6]. And as an initial matter, the District Court properly rejected the Government's argument that the warrantless search fell within one of those exceptions: that it was proper based on Curran's purported abandonment of the three bags. (*See* App. 14-15.) The Government could not carry its burden to establish proof of Curran's

---

[6] 765 F.3d 373, 382 (internal quotations omitted).

intent to abandon those bags by clear and unequivocal evidence. *See United States v. Fulani* (3d Cir. 2004).[7]

But the District Court erred in ruling that the search was lawful under the "plain view" exception, and that it was justified by safety concerns during police transport of Curran and the bags to the police station.

First, simply finding items in plain view does not justify a warrantless search of the bags. Three requirements must be satisfied to constitute a lawful warrantless search of evidence under the plain view doctrine:

> First, the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Second, the incriminating character of the evidence must be immediately apparent. Third, the officer must have a lawful right of access to the object itself.

*United States v. Menon* (3d Cir. 1994).[8]

Here, considering all three bags, the first requirement is not at issue. But as for the second requirement, items in plain view were from only the already opened Walmart tote bag — the other two bags

---

[7] 368 F.3d 351, 354.

[8] 24 F.3d 550, 559–60.

were closed. And contrary to the District Court's finding that "Detective Hine immediately recognized the items as matching the description of the items that R.S. reported stolen" (App. 15a), Detective Hine in fact testified that he could not identify the items outside the Walmart tote bag (the DVDs and film canisters) as the stolen items that belonged to R.S. (*See* App. 64-65.) Nor did Detective Hine testify that the items were incriminating in any way; indeed, he testified that before the bags were searched, he had no basis to arrest Curran. (S*ee* App. 68.) Application of the plain view doctrine requires probable cause, rather than mere reasonable suspicion, that the items in view are evidence of a crime; so here, nothing in record supports a finding of probable cause as to the spilled items. *See United States v. Meyer* (3d Cir. 1987).[9]

Therefore, because the incriminating nature of the items spilled outside the Walmart tote bag was not immediately apparent, the plain view doctrine does not apply. And even if the spilled items from the Walmart tote bag were sufficient to satisfy the plain view

---

[9] 827 F.2d 943, 945.

doctrine as to the Walmart tote bag items, search of the other two unopened bags would not be justified, as their contents were, by definition, not in plain view. *See Coolidge v. New Hampshire* (U.S. 1971).[10]

Second, the District Court's ruling that the bags' search was justified by concern for officer safety, citing *United States v. Matthews* (3d Cir. 2013)(not precedential)[11], (*see* App. 15b-15c), misapplies the legal standard. *Matthews* states that the Court will "sanction only those searches of personal property that occur ***after*** a suspect has been validly arrested . . . ." *Id*. (emphasis added)[12]. But here, the police testified that they searched the bags ***before*** they arrested Curran. (S*ee* App. 68.) And in any event, nothing in the record supports the conclusion that placing the three bags — which Curran was nowhere near during the whole of his encounter with police — in a police car trunk, while Curran was sitting handcuffed in the back seat, posed any reasonable risk to police safety. Thus,

---

[10] 403 U.S. 443, 466.

[11] 532 F. Appx. 211, 224-26.

[12] 532 F. App'x at 225.

this exception to the prohibition against warrantless searches does not apply here.

Finally, because the District Court upheld the search under the plain view doctrine, it did not address the Government's argument that the warrantless search of the bags was permissible as an inventory search. That argument would necessarily fail.

The Supreme Court has held that police can reasonably search the personal effects of a person under lawful arrest as part of the routine administrative procedure at a police stationhouse incident to booking. *See Illinois v. Lafayette* (U.S. 1983)[13]*; see also South Dakota v. Opperman* (U.S. 1976)(inventory searches permissible if pursuant to standard police procedures.)[14] But here, as noted, Curran was not under arrest when police searched the bags. (*See* App. 68.) And the Government offered no testimony or other evidence that the search was conducted pursuant to the department's standard police

---

[13] 462 U.S. 648.

[14] 428 U.S. 364.

inventory procedure. Therefore, the unlawful search of the three bags cannot be justified as an inventory search.[15]

## II. The District Court erred in denying Curran's motion to suppress evidence from the storage unit as its search was the product of the unlawful search of Curran's bags.

If this Court were to hold that that the evidence obtained directly from the warrantless search of the three bags should be suppressed, then the Court should further hold that evidence obtained from the storage unit should be suppressed as fruit of the poisonous tree, because the storage unit search warrants were issued

---

[15] In addition, the Government did not raise in the District Court, and thus waived, two other arguments that theoretically could have been asserted to support the warrantless search of the three bags: either the "independent source" doctrine, or the "inevitable discovery" doctrine. Under the independent source doctrine, the Government would have had to prove that the evidence discovered during an unlawful search would have been later obtained independently from lawful activities. *See Murray v. United States*, 487 U.S. 533 (1988); *United States v. Herrold,* 962 F.2d 1131, 1140 (3d Cir. 1992). Under inevitable discovery, the Government would have had to prove that the evidence inevitably would have been discovered by lawful means. *See Nix v. Williams*, 467 U.S. 431, 432 (1984); *Herrold*. In any event, the record is insufficient to support either argument.

based on information obtained from the unlawful search of the three
bags. *See Wong Sun v. United States* (U.S. 1963).[16]

This Court has upheld search warrant applications when, after
excising all the tainted evidence, independent sources can establish
probable cause. *See United States v. Price* (3d Cir. 2009).[17] But here,
the record does not support a finding that the Government
established that probable cause existed absent the tainted evidence
from the unlawfully searched bags. Detective Hine conceded that he
had no probable cause basis to arrest Curran before the bags were
searched. (*See* App. 68.) Indeed, the detectives were not sure Curran
had done anything wrong before they searched the bags. (*See* App.
47 ("We just couldn't figure out what he had done or if he had [been]
doing anything at that point.").)

Each warrant obtained for the storage unit was issued relying
on information arising out of the unlawful search of the bags as
probable cause. (*See* App. 71.) When Detective Hine applied for a

---

[16] 371 U.S. 471.

[17] 558 F.3d 270, 280.

search warrant for the storage unit, he cited the bags' contents as his final facts to support the warrant:

> Curran was placed into the back of the patrol unit and I checked the items that were in the field next to the fence. One bag was spilled open with several camera film containers, a knife and child's toy laying the grass. I opened a duffle bag and found a cell phone inside. I asked Curran if the cell phone was [R.S's]. He stated it was. The duffle bag, a blue hand bag and a large rolling bar were seized as evidence. I transported Curran to YCJC Booking to be arraigned on theft charges.

(App. 113.)

Similarly, Detective Baker applied for a search warrant for the "Digital images seized from Daniel Curran to include: thumb drives, cellular phones, computers, external storage devices." (See App. 125.) Like Detective Hine, Detective Baker also cited the bags' contents as probable cause to support a search warrant:

> Laying on the ground at the base of the fence surround (sic) the storage unit and separating the unit from Curran's vehicle was found three bags. Curran advised he through (sic) the bags over the fence as he exited his unit. Prior to the bags being placed in the trunk of the police unit, they were opened and numerous items reported by [R.S.] as stolen were found. Curran was transported to Central Booking to be processed for theft charges.

(See App. 127b, lines 120-23.)

And Detective Baker also applied for and was issued a search warrant for Curran's storage facility, and again he cited the bags' contents as probable cause to support a search warrant:

23

> Prior to the bags being placed in the trunk of the police unit, they were opened and numerous items reported by R.S. as stolen were found.

(*See* App. 122, line 122).

Before opening the bags, the detectives had no information rising to the level of probable cause that any stolen items would be in the storage unit; nor did they have information that Curran possessed illegal images outside of Curran's cell phone, which the detectives had already seized. The only basis for the detectives to apply for search warrants for the storage unit arose from the items found during the unlawful warrantless search of the bags. Thus, with no probable cause for the search warrant applications independent of the evidence discovered in the unlawful bag search, all items found in the storage unit should be suppressed as "fruit of the poisonous tree."

## III. Curran's 70-year sentence is substantively unreasonable.

This Court should vacate the Judgment against Curran and remand for resentencing because a 70-year sentence for a now 42-year old man (*see* PSR at 3) so far exceeds his life expectancy as to

be substantively unreasonable. *See United States v. Albertson* (3d Cir. 2011)(assuming an 80-year life expectancy).[18]

Curran's sentence violates the parsimony provision of 18 U.S.C. § 3553(a), which provides that a court must impose a sentence that is sufficient but not greater than necessary, to comply with the purposes of sentencing. *See United States v. Carter* (3d Cir. 2013)[19]. When a defendant is not sentenced to life imprisonment, but rather a sentence of definite years — or, put differently, when a defendant is not explicitly sentenced to die in prison, as in a life sentence — any sentence of years beyond a defendant's statistical life expectancy would serve no purpose under § 3553(a). Further, there comes a time when a defendant like Curran would surely pose no risk to the community, perhaps best determined by statistical life expectancy.

With respect, this Court should hold that any sentence exceeding a defendant's statistical life expectancy violates the parsimony provision *per se*, and so is substantively unreasonable. *But see United States v. Ward* (3d Cir. 2010) (ruling that a term of

---

[18] 645 F.3d 191, 197.

[19] 730 F.3d 187, 197.

imprisonment exceeding defendant's life expectancy does not render

sentence unreasonable, but without any discussion of the parsimony

provision).[20]

_____

[20] 626 F.3d 179, 185.

# CONCLUSION

WHEREFORE, for all the foregoing reasons, Appellant Daniel Thomas Curran respectfully requests that this Court vacate the judgment and remand for a new trial, or remand for resentencing.

Respectfully submitted,

JAMES V. WADE, ESQ.
Federal Public Defender

/s/ *Ronald A. Krauss*

RONALD A. KRAUSS, ESQ.
Asst. Federal Public Defender-Appeals
(Attorney ID No. 47938)
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
717-782-2237
*Ronald_krauss@fd.org*
*Attorneys for Appellant,*
*Daniel Thomas Curran*

Date: September 10, 2015

# CERTIFICATION OF BAR MEMBERSHIP
# IDENTICAL TEXT, VIRUS CHECK, AND WORD COUNT

I, Ronald A. Krauss, Esquire, Assistant Federal Public

Defender, certify that:

1)     I am a member in good standing of the bar of this Court;

2)     The text of the electronic format of the Brief of Appellant is identical to the hard copy format;

3)     A virus check was performed on the Brief of Appellant, using Symantec Endpoint Protection, last update was September 9, 2015, and no virus was detected;

4)     This Brief of Appellant contains 5159 words.

I make this combined certification under penalty of perjury,

pursuant to 28 U.S.C. § 1746.

/s/ Ronald A. Krauss

RONALD A. KRAUSS, ESQ.

Date:  September 10, 2015

# CERTIFICATE OF SERVICE

I, Ronald A. Krauss, Esq., Assistant Federal Public Defender, certify that I caused to be served on this date a hard copy of the attached Brief of Appellant via Electronic Case Filing, and/or by placing a copy in the United States mail, first class in Harrisburg, Pennsylvania, and/or by hand delivery, addressed to the following:

> MEREDITH A. TAYLOR, ESQ.
> United States Attorney's Office
> 228 Walnut Street, Room 220
> Harrisburg, PA 17101
> 717-221-4482
> *meredith.taylor@usdoj.gov*
> *Attorney for Appellee,*
> *United States of America*

> MR. DANIEL THOMAS CURRAN
> Reg. No. 71815-067
> FTC Oklahoma City
> PO Box 898801
> Oklahoma City, OK 73189
> *Appellant*

/s/ *Ronald A. Krauss*
RONALD A. KRAUSS, ESQ.

Date:    September 10, 2015